UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES H. CLARK, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:05CV1344 JCH |
| ) | |
| FLOYD CRUES, et al., ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment, filed January 16, 2007. (Doc. No. 213). The matter is fully briefed and ready for disposition.

## **BACKGROUND**

Plaintiff James H. Clark was employed by the Special School District of St. Louis County from 1990 to 2001. (Plaintiff's Amended Pleading to his Original Complaint ("Amended Complaint" or "Am. Compl."), ¶ 28). In October, 2003, Plaintiff was hired as a probationary teacher by the Board of Education of the City of St. Louis. (Am. Compl., ¶ 32(a); Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment ("Defendants' Facts"), ¶ 1, citing Warmack Aff., ¶ 29). Plaintiff continued his employment as a probationary teacher during the 2003-2004 and 2004-2005 school years. (Defendants' Facts, ¶ 1).

During the 2003-2004 school year, Plaintiff was assigned to the Roosevelt Ninth Grade Center. (Am. Compl., ¶ 32(b); Defendants' Facts, ¶ 2, citing Warmack Aff., ¶ 29). At that time, Defendants held the following employment positions: Melvin Gunter ("Gunter") was the Assistant Principal/Administrator in Charge of Roosevelt Ninth Grade Center (Gunter Aff., ¶ 4); Stephen Warmack ("Warmack") was the Principal of Roosevelt High School (Warmack Aff., ¶ 4); Sylvia

Shead ("Shead") was an Assistant Principal at Roosevelt High School (Shead Aff., ¶ 4); and Shane Hopper ("Hopper") was a Disciplinarian at Roosevelt High School (Hopper Aff., ¶ 4). Further, between 1976 and December, 2004, Defendant Floyd Crues ("Crues") was employed by the Board of Education of the City of St. Louis as a teacher, school principal, Director of Alternative Education, Assistant Superintendent, Deputy Superintendent, and Interim Superintendent of the St. Louis Public Schools ("SLPS"). (Crues Aff., ¶ 3).

While at the Roosevelt Ninth Grade Center in the 2003-2004 school year, Plaintiff was employed as a special education resource teacher, and assigned to work in an algebra classroom and a physical science classroom. (Am. Compl., ¶ 33). After approximately ten weeks of employment, Plaintiff was written up and threatened with termination by an administrator, for failing to hand in lesson plans. (Id., ¶ 39). Upon this threat of potential termination, Plaintiff decided to attempt to help Roosevelt's administration control and modify the disruptive and disrespectful behavior of its students. (Id., ¶ 40). Toward that end, in the spring of 2004, Plaintiff allegedly created and implemented his All-School Behavioral Modification Program, which Plaintiff refers to as his "Out of Area Program." (Id., ¶ 41). Plaintiff maintains the Out of Area Program is recognized as Patent Application Number 11/153,118. (Id., ¶ 41(d)). Plaintiff admits, however, that the United States Patent and Trademark Office has not issued a patent for Plaintiff's Out of Area Program. (Defendants' Facts, ¶ 183, citing Caracci Aff., ¶¶ 3-6; see also Plaintiff's Statement of Undisputed Facts in Opposition (sic) to Defendants' Summary Judgment Motion, ¶ 183).[1]

Pursuant to Plaintiff's Out of Area Program, if a student accumulates five or more referrals for out of area behavior, staff members have the option of placing the student in the Out of Area

---

[1] Plaintiff did receive a Certificate of Registration from the United States Copyright Office for his Out of Area Program on April 22, 2005. (Am. Compl., ¶ 53(b); Plaintiff's Exh. 48).

Program. (Defendants' Facts, ¶ 17, citing Defendants' Exh. L, P. 6). While a student is placed in the program, he or she is subject to certain consequences during the school day, including elimination of hall pass privileges, possible elimination of special event participation, and contact with the student's parent regarding the student's placement in the Out of Area Program. (Id.). Furthermore, the student is required to spend a minimum of five consecutive lunch periods in an alternative lunch room location. (Id.). According to Plaintiff, utilization of his Out of Area Program would reduce or eliminate the need for in-school suspension programs.[2] (Id., ¶ 16, citing Defendants' Exh. L, P. 5).

Plaintiff's Out of Area Program was utilized by a portion of the teachers at the Roosevelt Ninth Grade Center during a portion of the spring semester of 2004. (Defendants' Facts, ¶ 11, citing Gunter Aff., ¶ 11). Specifically, a group of teachers at the Roosevelt Ninth Grade Center employed a program of referring students who were misbehaving, or were not regularly in their assigned areas, to an alternative lunchroom monitored by Plaintiff. (Id., ¶ 55, citing Gunter Aff., ¶ 11).[3] According to Defendants, Defendants Warmack, Hopper, Shead, Crues, and Kenneth Brostron[4] had no knowledge of the program's existence in the spring of 2004. (Id., ¶ 12).[5]

---

[2] An in-school suspension program is a school discipline program whereby students who engage in misconduct are assigned to an in-school suspension room, rather than being suspended from school. (Defendants' Facts, ¶ 94, citing Crues Aff., ¶ 29). According to Defendants, in-school suspension programs were utilized throughout public school systems in the State of Missouri and across the country for many years prior to Plaintiff's employment with the Board of Education of the City of St. Louis. (Id., ¶ 95, citing Crues Aff., ¶ 30).

[3] According to Plaintiff, after approximately ten weeks of implementation (March 3rd-May 5th, 2004), Roosevelt's administration intentionally sabotaged the program. (Am. Compl., ¶ 42(a)).

[4] At all relevant times, Defendant Kenneth Brostron ("Brostron") was legal counsel for the Board of Education of the City of St. Louis. (Brostron Aff., ¶ 11).

[5] Defendants further maintain that at no time has Plaintiff's Out of Area Program been implemented in any school with the SLPS, other than the limited implementation of such program at the Roosevelt Ninth Grade Center in the spring of 2004. (Defendants' Facts, ¶ 20).

Plaintiff claims he gave a copy of his Out of Area Program to Defendant Crues on August 11, 2004. (Am. Compl., ¶ 53(b)).[6] Plaintiff further provided a copy of the program to Defendant Warmack in or around September, 2004. (Defendants' Facts, ¶ 41, citing Warmack Aff., ¶ 8).[7] According to Defendants, upon receiving the copy, Warmack briefly reviewed Plaintiff's Out of Area Program, but quickly determined the program would be of no benefit to the St. Louis Public Schools. (Id., ¶ 43, citing Warmack Aff., ¶ 9).

On October 5, 2004, School Service Systems, LLC, made a presentation to the Board of Education of the City of St. Louis, in an effort to obtain a contract to provide in-school suspension services. (Defendants' Facts, ¶ 98, citing Lee Aff., ¶ 12). School Service Systems, LLC, began providing in-school suspension services in the St. Louis Public Schools on November 1, 2004. (Id., ¶ 99, citing Lee Aff., ¶ 13). According to Defendants, at no time from January 1, 2004, to the present, did the head of School Service Systems, LLC, receive any documents or information from any employee or representative of the Board of Education, pertaining to an out of area student behavior modification program, or a program based on the referral of students who are out of their assigned areas to an alternative lunchroom. (Id., ¶ 101, citing Lee Aff., ¶ 15).[8]

On April 16, 2005, Plaintiff received a certified non-retention letter, informing him that his employment with the St. Louis Public Schools would be terminated at the end of the 2004-2005

---

[6] Defendant Crues maintains that at no time while he was employed by the Board of Education of the City of St. Louis did he review or read any materials relating to Plaintiff's Out of Area Program. (Defendants' Facts, ¶ 118, citing Crues Aff., ¶ 8).

[7] At the time Plaintiff provided a copy of his program to Defendant Warmack, Warmack was serving as Assistant Superintendent for Secondary Schools. (Defendants' Facts, ¶ 41).

[8] Defendants further maintain that while Alternatives Unlimited may have presented a proposal to the Board of Education to provide in-school suspension programs, the Board of Education never contracted with Alternatives Unlimited for such services. (Defendants' Facts, ¶ 82, citing Crues Aff., ¶ 21; Replogle Aff., ¶ 8).

school year. (Am. Compl., ¶ 63).[9]  Defendants assert the discontinuation of Plaintiff's employment was based on his failure properly to perform his job duties, and was not related in any way to the Board of Education's alleged acquisition of Plaintiff's Out of Area Program. (Defendants' Facts, ¶ 125, citing Shead Aff., ¶ 20). Defendants further maintain that at no time have any of the individual Defendants, or any other employee or representative of the Board of Education, attempted to market or sell Plaintiff's Out of Area Program, or Plaintiff's All-School Behavioral Modification Program, to others, nor have any of the Defendants attempted to market or sell any other in-school suspension program, student discipline program, or student behavioral modification program, to others. (Id., ¶ 143; see also Crues Aff., ¶ 46; Warmack Aff., ¶ 40; Shead Aff., ¶ 31; Hopper Aff., ¶ 28; Gunter Aff., ¶ 33; Brostron Aff., ¶ 40).

Plaintiff filed his Amended Complaint in this matter on May 22, 2006. (Doc. No. 117). In his Amended Complaint Plaintiff names the following Defendants: Floyd Crues; Stephen Warmack; Shane Hopper; Kenneth Brostron; Sylvia Shead; Mel Gunter; the City of St. Louis, Board of Education; and the St. Louis Public School District.[10] Plaintiff asserts the following causes of action against various combinations of Defendants: Inducement of Patent Infringement (Count 1); Willful Patent Infringement (Count 2); Abuse of Process (Count 3); Misappropriation of Missouri Trade Secret Act (Count 4); State Common Law Unfair Competition (Count 5); Copyright Infringement (Count 6); Tortious Interference with Attorney-Client Relationship (Count 7); Tortious Interference

---

[9] According to Defendants, the Board of Education of the City of St. Louis voted not to retain Plaintiff as a probationary teacher based on the recommendation of Defendant Shead. (Defendants' Facts, ¶ 124, citing Shead Aff., ¶ 19).

[10] According to Defendants, the proper name of the entity that owns, operates, and manages the St. Louis Public Schools, and that employed Plaintiff, is the Board of Education of the City of St. Louis. (Defendants' Memorandum in Support of their Motion for Summary Judgment ("Defendants' Memo in Support"), P. 2 n. 2, citing Mo. Rev. Stat. § 162.571 (2000)). The Court will refer to this entity by its proper name throughout the remainder of this Memorandum and Order.

with an Advantageous Business Relationship (Count 8); Tortious Interference with a Contractual Relationship (Count 9); Unjust Enrichment (Count 10); Undue Influence (Count 11); Assumption of Duty (Count 12); Defamation (Count 13); Breach of Fiduciary Duty (Count 14); Fraudulent Misrepresentation (Count 15); Negligence (Count 16); Intentional Infliction of Emotional Distress (Count 17); and Civil Conspiracy (Count 18). As stated above, Defendants filed the instant Motion for Summary Judgment on January 16, 2007, asserting there exist no genuine issues of material fact, and thus Defendants are entitled to judgment as a matter of law as to all counts of Plaintiff's Amended Complaint. (Doc. No. 213).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Inducement of Patent Infringement and Willful Patent Infringement

As stated above, in Count One of his Amended Complaint, Plaintiff purports to state a claim for inducement of patent infringement against Defendants Crues, Brostron, and the Board of Education of the City of St. Louis. (Am. Compl., ¶¶ 103-113). In Count Two, Plaintiff purports to state a claim for willful patent infringement against the same Defendants. (Id., ¶¶ 114-120). In their Motion for Summary Judgment, Defendants maintain they are entitled to summary judgment on these claims, for three reasons: (1) Plaintiff does not hold an actual patent for his purported program; (2) Plaintiff assigned all rights in his purported patent to Alternative Discipline and Behavioral Concepts, LLC, which is no longer a plaintiff in this lawsuit[11]; and (3) Defendants did not engage in any acts constituting infringement of Plaintiff's purported patent. (Defendants' Memo in Support, P. 3).

Plaintiff's patent infringement claims arise under 35 U.S.C. § 271, which states in relevant part as follows:

(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

---

[11] In an Order entered December 16, 2005, Alternative Discipline and Behavioral Concepts, LLC, was dismissed as a Plaintiff in this matter. (Doc. No. 61).

See 35 U.S.C. § 271(a) & (b). In order to establish a prima facie patent infringement claim, Plaintiff must plead: "(1) that the trial court has jurisdiction over the matter; (2) that the plaintiff has title to the patent; (3) that the plaintiff is the original and first inventor who was subject to infringement; (4) the claims of the patent which the defendant has infringed and (5) that the defendant received notice of the infringement." Telequip Corp. v. Change Exchange, 2004 WL 1739545 at *1 (N.D. N.Y. Aug. 3, 2004), citing 60 Am.Jur.2d *Patents* § 875 (2003) (footnotes omitted).

Upon consideration, the Court finds Plaintiff's Count Two claim for willful patent infringement fails, because Plaintiff fails to establish the existence of a patent for his Out of Area Program. Specifically, the Court notes that while Plaintiff provides evidence he applied for a patent for the program (see Doc. No. 3-4), he provides absolutely no evidence that the patent ever issued. Rather, in his response to Defendants' Statement of Uncontroverted Facts, Plaintiff admits the United States Patent and Trademark Office has yet to issue a patent for Plaintiff's Out of Area Program. (See Defendants' Facts, ¶ 183, and Plaintiff's Response thereto). In light of this deficiency, Plaintiff cannot maintain a claim for willful patent infringement, and so Defendants' Motion for Summary Judgment as to Count Two must be granted.[12] See State Industries, Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe *a patent*, the patent must exist and one must have knowledge of it. A 'patent pending' notice gives one no knowledge whatsoever....[Further,] [f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents.").[13]

---

[12] Defendants' Motion for Summary Judgment as to Count One of Plaintiff's Amended Complaint will be granted as well, because as a matter of law, there can be no liability under 35 U.S.C. § 271(b) for acts of inducement taken before the issuance of a patent. See National Presto Industries, Inc. v. West Bend Co., 76 F.3d 1185, 1196 (Fed. Cir. 1996).

[13] In light of the Court's above ruling, it need not address Defendants' other arguments in favor of dismissal.

## II. Copyright Infringement

In Count Six of his Amended Complaint, Plaintiff purports to state a claim for copyright infringement against Defendants Crues, Warmack, Gunter, Brostron, and the Board of Education of the City of St. Louis. (Am. Compl., ¶¶ 155-164). Specifically, Plaintiff maintains his status as "Author" of the Out of Area Program is recognized through his Certificate of Registration, issued by the United States Copyright Office on April 22, 2005. (Id., ¶ 156; Plaintiff's Exh. 48). Plaintiff continues to allege Defendants infringed upon his copyright, as follows:

> 159. The Plaintiff provided Defendant Gunther (sic) with the approximately eight (8) to ten (10) pages of the initial stages of his "Out of Area" program during the 1st week of March 2004, which is when the Plaintiff began implementing his program. During the same week, Defendant Gunther (sic) disclosed these documents, to Defendant Warmack, who immediately used the same concept referencing Hall Pass procedures at his employment location at Roosevelt High School and did so without permission from the Plaintiff, or knowledge and without recognition on behalf of the Plaintiff.
>
> 161.[14] Based on factual information and belief, Defendant Warmack intentionally disclosed the Plaintiff's Copyright authorized Intellectual Property to Defendant Crues shortly thereafter and prior to Crues' acquirement of his 2004-05 employment contractual agreement with the [Board of Education]. Since Defendant Brostron developed and approved the referenced contract to include six (6) compensation bonus incentives of which one (1) of the bonuses unlawfully misrepresented Crues as the creator of the Plaintiff's property and providing a personal compensation reward upon initiating the Plaintiff's "Authors" idea.

(Am. Compl., ¶¶ 159, 161).

The federal copyright laws define copyrightable matter as: "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." See 17 U.S.C. § 102(a) (2000). Works of authorship subject to copyright protection

---

[14] Plaintiff's Amended Complaint does not contain a paragraph 160.

include literary works; musical works, including any accompanying words; dramatic works, including any accompanying music; pantomimes and choreographic works; pictorial, graphic, and sculptural works; motion pictures and other audiovisual works; sound recordings; and architectural works. Id. The statute expressly excludes from copyright protection, "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b) (2000).

In their Motion for Summary Judgment, Defendants maintain they are entitled to summary judgment on Plaintiff's copyright infringement claim, for three reasons: (1) Plaintiff's Out of Area Program is a business idea, excluded from copyright protection under 17 U.S.C. § 102(b); (2) Plaintiff is not the owner of the materials at issue, because they were created as a "work made for hire"; and (3) Plaintiff presents no evidence Defendants actually copied or misappropriated Plaintiff's Out of Area Program. (Defendants' Memo in Support, PP. 19-22). Because it is dispositive, the Court considers only Defendants' first argument.

As stated above, Defendants assert Plaintiff's Out of Area Program constitutes a business idea, excluded from copyright protection under 17 U.S.C. § 102(b). (Defendants' Memo in Support, P. 19). In support of this assertion, Defendants note that in his Amended Complaint, Plaintiff repeatedly alleges various Defendants and other individuals have attempted to implement the "program" Plaintiff claims to have copyrighted. (Id., citing Am. Compl., ¶¶ 71, 79, 84, 89, 97, 98). Defendants further note that even in the copyright infringement count itself, Plaintiff alleges only that Defendants "used the same concept referencing Hall Pass procedures," and "initiat[ed] the Plaintiff's 'Authors' idea" without permission. (Id., citing Am. Compl., ¶¶ 159, 161). Defendants maintain these allegations, even if true, cannot support a claim of copyright infringement. (Id.).

In McMahon v. Prentice-Hall, Inc., this Court explored the scope of copyrightable material, and held as follows:

> Plaintiff repeatedly claims that the concepts and ideas in his books were copied by [defendant]....It is clear, however, that a writer does not obtain a copyright on ideas or concepts. The similarity of content of the works, with respect to concepts and ideas, does not amount to copyright infringement....
> Similarly, Plaintiff may not claim copyright infringement due to the utilization by [Defendant] of theories first espoused by plaintiff in his works. Theories, as such, are not copyrightable....

McMahon v. Prentice-Hall, Inc., 486 F.Supp. 1296, 1303 (E.D. Mo. 1980).

Upon review of the record, the Court finds that at no time does Plaintiff allege any more than that Defendants utilized his ideas and procedures in their attempts to control and modify the disruptive and disrespectful behavior of students. For example, with respect to Plaintiff's Hall Pass, Plaintiff alleges in his Amended Complaint that Defendant Warmack used an exact replica, "*which he slightly altered*," at Roosevelt High School in the spring of 2004. (Am. Compl., ¶ 48(b) (emphasis added)). Furthermore, in his response to Defendants' Statement of Uncontroverted Facts, Plaintiff repeatedly acknowledges Defendants never actually implemented Plaintiff's Out of Area Program, but rather allegedly copied the underlying concepts. (See, e.g., Plaintiff's Response to Defendants' Facts, ¶ 96 ("Although it is Stated that the further development was not based on materials prepared by the Plaintiff, their further developed in-school suspension program was based on altered, modified, and re-prepared documents avoiding the appearance of using the Plaintiff's 'Out of Area' program and related concepts"); Plaintiff's Response to Defendants' Facts, ¶ 144 ("Although no Defendant copied, or authorized any other employee or representative of the Board of Education of the City of St. Louis to copy the Plaintiff's materials. As an alternative, the Defendants re-wrote the Plaintiff's 'Out of Area' program with changes to avoid an appearance of an infringement, based on the Doctrine of Equivalents, the Defendants still infringed on Plaintiff's Intellectual Property")). Under

these circumstances, the Court finds that at most, Defendants copied Plaintiff's concepts, and such acts do not constitute copyright infringement.[15] See McMahon, 486 F.Supp. at 1303. Defendants' Motion for Summary Judgment on Count Six of Plaintiff's Amended Complaint must therefore be granted.

### III. Conspiracy In Violation Of 42 U.S.C. § 1983

In the final count of his Amended Complaint, Plaintiff alleges in part that Defendants engaged in a conspiracy, in violation of 42 U.S.C. § 1983. (Am. Compl., ¶¶ 243-254). Under Eighth Circuit law, "[t]o prove a § 1983 conspiracy claim against a particular defendant, the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999) (citations omitted). Further, "[s]ection 1983 only provides a remedy for violations of rights expressly secured by federal statutes or the Constitution." Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001) (citations omitted).

In Count Eighteen, Plaintiff alleges in relevant part as follows:

247. Defendant **Gunther** (sic) was the first to acquire documentation of the Plaintiff's program in January of 2004. Upon this information, additional SLPS officials became involved and during the February 14th 2004 board meeting, ADOPTED a policy approving former employees can't be hired for services rendered for two years.

---

[15] As further support for its ruling, the Court notes that in their Motion for Summary Judgment, Defendants deny they even copied Plaintiff's ideas or concepts. For example, Defendants present evidence that the hall passes used at both Roosevelt High School and the Roosevelt Ninth Grade Center have not changed from 1992 to the present. (Defendants' Memo in Support, P. 6, citing Warmack Aff., ¶¶ 24-27; Shead Aff., ¶¶ 16-17). Thus, similar hall passes were used throughout the district long before Plaintiff was employed by the Board of Education, and so could not have been copied from Plaintiff's Out of Area Program. (Id., PP. 6-7, citing Warmack Aff., ¶¶ 25-26; Shead Aff., ¶¶ 16-17; Hopper Aff., ¶¶ 16-17; Gunter Aff., ¶¶ 18-19).

248. Defendants **Gunther** (sic) **and Wamack** (sic) communicated as noted in the "Out of Area" Hall Pass issue during the first week of March 2004.

249. Defendant[s] Crues and Brostron became involved during the development and approval of Crues' employment contract for the 2004-05 school year and the referenced bonus incentive to initiate the Plaintiff's program.

(Am. Compl., ¶¶ 247-249 (emphasis in original)). Upon consideration of the foregoing, the Court finds Plaintiff fails to assert a constitutional or federal statutory right upon which his § 1983 conspiracy claim is based. Plaintiff thus fails to state a claim under § 1983, and so Defendants' Motion for Summary Judgment as to this portion of Count Eighteen must be granted.

## IV. Plaintiff's Supplemental State Law Claims

28 U.S.C. § 1367 provides in relevant part as follows:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–....

(3) the district court has dismissed all claims over which it has original jurisdiction,....

28 U.S.C. § 1367(a) & (c).

The Eighth Circuit has held that district courts have "broad discretion" in deciding whether to exercise pendent jurisdiction over state law claims. Willman v. Heartland Hosp. East, 34 F.3d 605, 613 (8th Cir. 1994), cert. denied, 514 U.S. 1018 (1995); see also Innovative Home Health Care, Inc. v. P.T.-O.T. Associates of the Black Hills, 141 F.3d 1284, 1287-88 (8th Cir. 1998). Upon consideration, this Court will now exercise its discretion under 28 U.S.C. § 1367(c), and dismiss the remainder of the claims in Plaintiff's Amended Complaint without prejudice.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 213) is **GRANTED** in part, and Counts One, Two, and Six of Plaintiff's Amended Complaint are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 213) is **GRANTED** in part, and the 42 U.S.C. §1983 portion of Count Eighteen of Plaintiff's Amended Complaint is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Counts Three through Five, Counts Seven through Seventeen, and the remainder of Count Eighteen, of Plaintiff's Amended Complaint (Doc. No. 117) are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that all other pending motions in this matter are **DENIED** without prejudice.

An appropriate Judgment will accompany this Memorandum and Order.


Dated this 23rd day of March, 2007.


/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE